*MHN*

**FILED**

JUN 1 1 2008

6-11-2008

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
CHICAGO DIVISION

SHIRLEY DOUCETTE, on behalf of        )
the Estate of WILFRED DOUCETTE,       )        **08CV3363**
                                      )
            Plaintiff,                )        **JUDGE LEINENWEBER**
                                      )        **MAGISTRATE JUDGE ASHMAN**
      v.                              )
                                      )
BAXTER HEALTHCARE                     )        Jury Trial Demanded
CORPORATION                           )
                                      )
            Defendant.                )

## COMPLAINT FOR DAMAGES

### INTRODUCTION

1.    Baxter Healthcare Corporation (hereinafter referred to as "Baxter" or "Defendant") manufactures heparin, an injectable anticoagulant used to prevent the formation of clots and extension of existing clots within the blood. Baxter sells its heparin product to healthcare providers despite knowledge that its product causes a serious undisclosed side-effect known as heparin-induced thrombocytopenia ("HIT").

2.    Wilfred Doucette suffered a heart attack in June 2006 requiring him to undergo emergency cardiac bypass surgery. During the surgery Wilfred Doucette was administered heparin manufactured by Defendant. Following administration of heparin, Wilfred Doucette suffered a significant drop in platelets and was diagnosed with a HIT reaction. As a direct and proximate result of the HIT reaction Wilfred Doucette died on June 12, 2006.

3.    Defendant manufactured, tested, labeled, packaged, marketed and sold its heparin product throughout the United States, including Shirley and Wilfred Doucette's home State of

1

Maine, without fully disclosing the known risks associated with the product, including the risk of HIT; and concealed and affirmatively misrepresented the extent of health dangers caused by its product.

4.     Defendant's efforts to maximize profits came at the expense of the health of Wilfred Doucette who needlessly suffered injuries that could have been prevented had Defendant fully disclosed the dangers of heparin.

## JURISDICTION AND VENUE

5.     Plaintiff alleges an amount in damages in controversy in excess of $75,000, exclusive of interest and costs.  This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between the Plaintiff and the Defendant.

6.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391, because Defendant's principal place of business is located in this District.

## PARTIES

7.     Plaintiff Shirley Doucette, as representative of the Estate of Wilfred Doucette is, and at all relevant times hereto has been, a citizen of the State of Maine, and is over the lawful age of majority.  Plaintiff is the surviving spouse of Wilfred Doucette.

8.     At all times relevant herein, Wilfred Doucette ("Decedent") was also a resident of the State of Maine.

9.     Defendant Baxter is a Delaware Corporation with its principal place of business located at One Baxter Parkway, Deerfield, Illinois, 60015.  At all times pertinent, Baxter regularly and systematically engaged in the manufacture, packaging, labeling, marketing and sale of the heparin product that contributed directly or indirectly to Plaintiff's and Decedent's injuries.

2

FACTUAL ALLEGATIONS

10.    Heparin is one of the oldest drugs currently still in widespread clinical use. It's discovery can be attributed to the research activities of Jay McLean, a medical student at Johns Hopkins University who was working under the guidance of William Henry Howell. The first human trials of heparin began in 1935 and, by 1937, heparin was being put to clinical use. Today heparin is administered to nearly twelve million people annually.

11.    Heparin is widely used as an anticoagulant, preventing the formation of clots and extension of existing clots within the blood. Heparin is given parenterally – injected intravenously or subcutaneously. Because of its short biologic half-life of approximately one hour, heparin must be given frequently or as a continuous infusion.

12.    Baxter manufactures, markets, distributes and sells several forms of heparin throughout the United States, including the State of Maine, even though Defendant is aware of the risks of a serious side-effect associated with the product known as heparin-induced thrombocytopenia ("HIT").

13.    HIT is a serious antibody mediated reaction resulting from irreversible aggregation of platelets. HIT develops from a patient's reaction to heparin, resulting in the accumulation of "heparin antibodies." HIT attacks platelets in the blood, and sometimes the lining of the blood vessels, and produces the opposite result from that for which heparin is being used; it causes rather than prevents clotting.

14.    Defendant has long been aware of the serious side effects associated with heparin use but has consciously opted to place profits before patient care, refusing to adequately warn patients and healthcare providers about HIT.

3

15.    In and around June 2006, Decedent suffered a heart attack requiring emergency cardiac bypass surgery. As part of his treatment Decedent was administered heparin manufactured by Defendant Baxter.

16.    Within one week of his surgery Decedent began experiencing symptoms of a HIT reaction including a significant drop in blood platelets, deep vein thrombosis, cyanosis and tissue necrosis on his extremities.

17.    As a direct and proximate result of the administration of heparin manufactured by Baxter, Plaintiff and Decedent have been injured and incurred substantial damages including, but not limited to, the death of the Decedent, medical and hospital expenses, physical and mental pain and suffering, loss of enjoyment of life, and other damages for which Defendant is liable.

18.    At all times relevant hereto, Defendant itself, or through others, did manufacture, create, design, test, label, sterilize, package, supply, market, sell, advertise, and otherwise distribute heparin.

19.    At all times relevant hereto, the manufacture, creation, design, testing, labeling, packaging, marketing, sale and advertising by Baxter of its heparin sought to create the image and impression that heparin use was safe and had fewer side effects and adverse reactions than what was known by Defendant.

20.    Prior to the administration of heparin to Decedent, information was available to Defendant with respect to the defects and dangerous nature of the drug. Prior to the administration of heparin to Decedent, it was known to Defendant, or Defendant had reason to know or should have known, of the increased risk of HIT associated with the heparin.

21.    Defendant purposefully minimized and understated health hazards and risks associated

4

with heparin.  Defendant, through its literature, packaging and labeling deceived potential users of heparin by conveying certain information while omitting other information to suggest widespread acceptability, while downplaying the known adverse and serious health effects of the drug.  Defendant falsely and fraudulently withheld relevant information from potential heparin users, including Plaintiff and Decedent.  Further, Defendant falsely and fraudulently withheld relevant information from physicians who administer heparin, including Decedent's physicians, thereby preventing those physicians from conducting a complete and fully-informed risk-benefit analysis before administering heparin, or taking appropriate steps to monitor the administration of heparin to prevent serious adverse events.

22.     Decedent's physicians relied on the Defendant's representations about heparin prior to the date of administering heparin for use.

23.     Prior to the date upon which heparin was administered to Decedent, Defendant knew or should have known that it was extremely dangerous and unsafe for use by the general public for its intended purpose.  Defendant failed to take appropriate action to cure these defects or, alternatively, failed to appropriately warn of the product's dangerous characteristics.

24.     Plaintiff is informed and believes that the heparin was defective and, on that basis, herein alleges that Baxter distributed a defective product which resulted in Plaintiff's and Decedent's injuries.

25.     Plaintiff is informed and believes, and on that basis, herein alleges, that Baxter did not utilize due care in the manufacture and sale of heparin.  In addition, Plaintiff is informed and believes, and on that basis, herein alleges that Baxter either knowingly or negligently designed, manufactured, fabricated, packaged, labeled, marketed, distributed, and/or sold defective

5

heparin.

26.     Decedent was exposed to the defective heparin designed, manufactured, fabricated, packaged, labeled, marketed, distributed, and/or sold by Defendant.  As a result of Decedent's exposure to said heparin, Plaintiff and Decedent suffered serious injury and now demand relief as requested below.

27.     Defendant's actions showed willful misconduct, malice, fraud, wantonness, oppression, or an entire want of care which would raise the presumption of conscious indifference to consequences.  Accordingly, additional damages for the sake of example and for the purpose of punishing the Defendant for its conduct, and in an amount sufficiently large to be an example to others and to deter Defendant and others from engaging in similar conduct in the future, is appropriate.  This wrongful conduct was done with the advance knowledge, authorization, and/or ratification of officers, directors, and/or managing agents of Baxter.

### CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF

#### (Strict Liability/Failure to Warn)

28.     Plaintiff realleges all prior paragraphs of the Complaint as if set out here in full.

29.     At all times herein mentioned, heparin was defective in that it was not accompanied by proper warnings regarding known or knowable risks of harm associated with the drug.

30.     Additionally, at all times herein mentioned, heparin was defective due to the inadequate post-marketing warning or instruction because, after Defendant knew or should have known of the risks of injury from heparin, it failed to promptly respond to and warn about the likelihood of injury.

6

31.    Defendant knew that heparin was to be used by the user without inspection for defects therein.

32.    The reasonably foreseeable use of the product, i.e., administration to prevent the formation of clots and extension of existing clots within the blood, involved substantial dangers not readily recognizable by the ordinary user of the product.

33.    Defendant had a duty to warn Decedent, other people who would be administered heparin, and the medical community about the dangers of its heparin which it knew, or in the exercise of ordinary care, should have known, at the time the product left Defendant's control.

34.    Defendant further breached its duty to warn, in that the types and frequency of injuries caused by heparin are not generally known to medical professionals. Nor did Plaintiff or Decedent have actual knowledge of the dangers prior to the administration of the drug to Decedent.

35.    As a direct and proximate result of Defendant's failure to warn Plaintiff and Decedent of the dangers of heparin, Plaintiff and Decedent were caused to suffer the herein described injuries and damages.

36.    Defendant's conduct was committed with knowing, conscious, wanton, willful and deliberate disregard for the value of human life and the rights and safety of consumers, including Plaintiff and Decedent, thereby entitling Plaintiff and Decedent to punitive and exemplary damages so as to punish Defendant and deter it from similar conduct in the future.

SECOND CLAIM FOR RELIEF

(Strict Liability/Design Defect)

37.    Plaintiff realleges all prior paragraphs of the Complaint as if set out here in full.

7

38.    The heparin manufactured and supplied by Defendant was placed into the stream of commerce by Defendant in a defective and unreasonably dangerous condition in that the foreseeable risks exceeded the benefits associated with the design or formulation.

39.    Alternatively, the heparin manufactured and supplied by Defendant was defective in design or formulation in that when it was placed in the stream of commerce it was unreasonably dangerous and more dangerous than an ordinary consumer would expect.

40.    The heparin manufactured and supplied by Defendant was defective due to inadequate warnings or instructions because the Defendant knew or should have known that the product created a risk of harm to consumers and Defendant failed to adequately warn of said risks.

41.    The heparin manufactured and supplied by Defendant was defective due to inadequate warning and inadequate testing.

42.    The heparin manufactured and supplied by Defendant was defective due to inadequate post-marketing warning or instruction because after the Defendant knew or should have known of the risk of injury from heparin, it failed to provide adequate warnings to users or consumers of the product and continued to promote the product.

43.    As a proximate and legal result of the defective and unreasonably dangerous condition of these products manufactured and supplied by Defendant, Plaintiff and Decedent were caused to suffer the herein described injuries and damages.

44.    Defendant's conduct was committed with knowing, conscious, wanton, willful and deliberate disregard for the value of human life and the rights and safety of consumers, including Plaintiff and Decedent, thereby entitling Plaintiff and Decedent to punitive and exemplary damages so as to punish Defendant and deter it from similar conduct in the future.

## THIRD CLAIM FOR RELIEF

### (Negligence)

45.    Plaintiff realleges all prior paragraphs of the Complaint as if set out here in full.

46.    At all times herein mentioned, Defendant had a duty to properly manufacture, compound, test, inspect, package, label, distribute, market, examine, maintain, supply, provide proper warnings and prepare for use and sell the aforementioned product.

47.    At all times herein mentioned, Defendant knew, or in the exercise of reasonable care, should have known, that the aforesaid product was of such a nature that if it was not properly manufactured, compounded, tested, inspected, packaged, labeled, distributed, marketed, examined, sold, supplied, prepared, and provided with proper warnings, it was likely to injure the product's user.

48.    Defendant so negligently and carelessly manufactured, compounded, tested, failed to test, inspected, failed to inspect, packaged, labeled, distributed, recommended, displayed, sold, examined, failed to examine, over promoted and supplied the aforesaid products, that it was dangerous and unsafe for the use and purpose for which it was intended.

49.    Defendant was aware of the probable consequences of the aforesaid conduct.  Despite the fact that Defendant knew, or should have known that heparin caused serious injuries, it failed to disclose the known or knowable risks associated with the product as set forth above.  Defendant willfully and deliberately failed to avoid those consequences, and in doing so, Defendant acted with a conscious disregard of the safety of Plaintiff, Decedent and the consuming public.

50.    As a result of the carelessness and negligence of Defendant, the aforesaid product caused Plaintiff and Decedent to thereby sustain the damages and injuries as herein alleged.

51.    Defendant's conduct was committed with knowing, conscious, wanton, willful and deliberate disregard for the value of human life and the rights and safety of consumers, including Plaintiff and Decedent, thereby entitling Plaintiff and Decedent to punitive and exemplary damages so as to punish Defendant and deter it from similar conduct in the future.

FORTH CLAIM FOR RELIEF

(Breach of Implied Warranty)

52.    Plaintiff realleges all prior paragraphs of the Complaint as if set out here in full.

53.    At all times mentioned herein, Defendant manufactured, compounded, packaged, labeled, distributed, marketed, examined, supplied, prepared, and sold heparin, and prior to the time it was administered to Decedent, Defendant impliedly warranted to Plaintiff, Decedent and Decedent's physicians, that the product was of merchantable quality and safe for the use for which it was intended.

54.    Plaintiff, Decedent and Decedent's physicians relied on the skill and judgment of Defendant in using the aforesaid product.

55.    The product was unsafe for its intended use and it was not of merchantable quality as warranted by Defendant in that it had very dangerous propensities when put to its intended use and would cause severe injury to the user. The aforesaid product was unaccompanied by warnings of its dangerous propensities that were either known or reasonably scientifically knowable at the time of distribution. The aforesaid product did cause Plaintiff and Decedent to sustain damages and injuries as herein alleged.

56.    Defendant's conduct was committed with knowing, conscious, wanton, willful and deliberate disregard for the value of human life and the rights and safety of consumers, including

10

Plaintiff and Decedent, thereby entitling Plaintiff and Decedent to punitive and exemplary damages so as to punish Defendant and deter it from similar conduct in the future.

FIFTH CLAIM FOR RELIEF

(Breach of Express Warranty)

57.    Plaintiff realleges all prior paragraphs of the Complaint as if set out here in full.

58.    The aforementioned manufacturing, compounding, packaging, designing, distributing, testing, constructing, fabricating, analyzing, recommending, merchandising, advertising, promoting, supplying and selling of the aforesaid product was expressly warranted to be safe for use by Plaintiff, Decedent and other members of the general public.

59.    At the time of making of the express warranties, Defendant had knowledge of the purpose for which the aforesaid product was to be used and warranted the same to be, in all respects, fit, safe, and effective and proper for such purpose.  The aforesaid product was unaccompanied by warnings of its dangerous propensities that were either known or knowable at the time of distribution.

60.    Plaintiff, Decedent and Decedent's physicians reasonably relied upon the skill and judgment of Defendant and upon said express warranty in using the aforesaid product.  The warranty and representations were untrue in that the product caused severe injury to Decedent and was unsafe and, therefore, unsuited for the use for which it was intended.  The aforesaid product could and did thereby cause Plaintiff and Decedent to sustain damages and injuries as herein alleged.

61.    Defendant's conduct was committed with knowing, conscious, wanton, willful and deliberate disregard for the value of human life and the rights and safety of consumers, including

11

Plaintiff and Decedent, thereby entitling Plaintiff and Decedent to punitive and exemplary

damages so as to punish Defendant and deter it from similar conduct in the future.

### SIXTH CLAIM FOR RELIEF

#### (Fraud)

62.     Plaintiff realleges all prior paragraphs of the Complaint as if set out here in full.

63.     Defendant falsely and fraudulently represented to Plaintiff, Decedent, physicians and

members of the general public, that the aforesaid product was safe for use. The representations

made by Defendant were in fact, false. The true facts include, but are not limited to, the fact that

the aforesaid product was not safe and was, in fact, dangerous to the health and body of

Decedent.

64.     Further representations by Defendant were, in fact, false. The true facts were that the

product was not adequately tested. Defendant did not disclose or warn users and their physicians

about the known risk of injury in using the product. Defendant misrepresented the safety of the

product, represented that the product marketed was safe for use, and concealed warnings of the

known or knowable risks of injury in using the product.

65.     When Defendant made these representations, it knew they were false. Defendant made

said representations with the intent to defraud and deceive Plaintiff, Decedent, and healthcare

providers and with the intent to induce them to act in the manner herein alleged, i.e., to use the

aforementioned product.

66.     At the time Defendant made the aforementioned representations and at the time Decedent

was administered heparin, Plaintiff, Decedent, and Decedent's physicians were ignorant of the

falsity of these representations and reasonably believed them to be true. In reliance upon said

12

representations, Plaintiff, Decedent, and Decedent's physicians were induced to, and did, use the aforementioned product as herein described. If Plaintiff, Decedent, and Decedent's physicians had known the actual facts, heparin would not have been used. The reliance of Plaintiff, Decedent, and Decedent's physicians upon Defendant's representations was justified because said representations were made by individuals and entities who appeared to be in a position to know the true facts.

67.    As a result of Defendant's fraud and deceit, Plaintiff and Decedent were caused to sustain the herein described injuries and damages.

68.    Defendant's conduct was committed with knowing, conscious, wanton, willful and deliberate disregard for the value of human life and the rights and safety of consumers, including Plaintiff and Decedent, thereby entitling Plaintiff and Decedent to punitive and exemplary damages so as to punish Defendant and deter it from similar conduct in the future.

SEVENTH CLAIM FOR RELIEF

(Negligent Misrepresentation)

69.    Plaintiff realleges all prior paragraphs of the Complaint as if set out here in full.

70.    Defendant had an absolute duty to disclose the true facts regarding the safety of heparin as the only entity capable of knowing and reporting the true facts regarding the safety and testing of its heparin. Furthermore, Defendant had a duty to ensure it had a reasonable basis for making the representations as set forth above.

71.    Defendant made the aforesaid representations with no reasonable ground for believing them to be true. It did not have accurate or sufficient information. Furthermore, Defendant was aware that without such information it could not accurately make the aforesaid representations.

13

72.     The aforesaid representations were made to the physicians prescribing heparin prior to the date it was administered to Decedent and the physicians relied on the representations about the safety of heparin when administering it to Decedent.

73.     At the time the aforesaid representations were made, Defendant concealed from Plaintiff, Decedent, and Decedent's physicians its lack of information on which to base its representations and its consequent inability to make the aforesaid representations accurately.

74.     The aforesaid representations were made by Defendant with the intent to induce Plaintiff, Decedent, and Decedent's physicians to act in the manner herein alleged, that is, to administer heparin as indicated.

75.     Defendant falsely represented to Plaintiff, Decedent, physicians, and members of the general public, that the aforesaid product was safe for use.  The representations by Defendant were, in fact, false.  The true facts were that the aforesaid product was not safe and was, in fact, dangerous to the health and body of Decedent and thereby caused injuries.

76.     Defendant made the aforesaid representations with no reasonable ground for believing them to be true.  It did not have accurate or sufficient information concerning the representations.  Furthermore, Defendant was aware that without such information it could not accurately make the aforesaid representation.

77.     At the time Defendant made the aforesaid representations, and at those times heparin was administered to Decedent, Plaintiff, Decedent, and Decedent's physicians were ignorant of the falsity of these representations and reasonably believed them to be true.  In reliance upon said representations, Decedent was administered heparin as herein described.  If Plaintiff, Decedent and Decedent's physicians had known the actual facts, they would not have taken such action.

14

The reliance of Plaintiff, Decedent, and the physicians upon Defendant's representations was justified because the representations were made by individuals and entities that appeared to be in a position to know the true facts.

78.    As a result of Defendant's false representations and concealment, Plaintiff and Decedent were caused to sustain the herein described injuries and damages.

79.    Defendant's conduct was committed with knowing, conscious, wanton, willful and deliberate disregard for the value of human life and the rights and safety of consumers, including Plaintiff and Decedent, thereby entitling Plaintiff and Decedent to punitive and exemplary damages so as to punish Defendant and deter it from similar conduct in the future.

## EIGHTH CLAIM FOR RELIEF

### (Fraud by Concealment)

80.    Plaintiff realleges all prior paragraphs of the Complaint as if set out here in full.

81.    At all times mentioned herein, Defendant had the duty and obligation to disclose to Plaintiff, Decedent and Decedent's physicians the true facts concerning the aforesaid product; that is, that said product was dangerous and defective, and how likely it was to cause serious consequences to users, including injuries as herein occurred, and how unnecessary it was to use said product for the purposes or in the manner indicated.  Defendant withheld the above from Plaintiff, Decedent, Decedent's physicians and the general public prior to the date heparin was administered to Decedent, while concealing the following material facts.

82.    At all times mentioned herein, Defendant had a duty and obligation to disclose to Plaintiff, Decedent and Decedent's physicians the true facts concerning heparin; that is, that use would cause injuries.

15

83.    At all times herein mentioned, Defendant intentionally, willfully and maliciously concealed or suppressed the facts set forth above from Decedent's physicians and therefore from Decedent, with the intent to defraud as herein alleged.

84.    At all times herein mentioned, neither Plaintiff, Decedent, nor Decedent's physicians were aware of the facts set forth above, and had they been aware of said facts, they would not have acted as they did, that is, would not have utilized the product.

85.    As a result of the concealment or suppression of the facts set forth above, Plaintiff and Decedent sustained injuries and damages as hereinafter set forth.

86.    Defendant's conduct was committed with knowing, conscious, wanton, willful and deliberate disregard for the value of human life and the rights and safety of consumers, including Plaintiff and Decedent, thereby entitling Plaintiff and Decedent to punitive and exemplary damages so as to punish Defendant and deter it from similar conduct in the future.

### NINTH CLAIM FOR RELIEF

#### (Intentional Infliction of Emotional Distress)

87.    Plaintiff realleges all prior paragraphs of the Complaint as if set out here in full.

88.    Defendant placed into the stream of commerce the defective heparin product, knowing it was not fit for its intended purpose.

89.    Defendant also knew that Plaintiff and Decedent would suffer emotional distress after the defective heparin was administered to Decedent, ultimately causing attendant medical problems as described herein and resulting in his death.

90.    Defendant's conduct in manufacturing, retailing, distributing, fabricating, advertising, promoting, wholesaling, modifying, and/or placing on the market and into the flow of commerce

16

a known defective product constitutes the intentional infliction of emotional distress upon Plaintiff and Decedent.

91.     As a result of Defendant's conduct, Plaintiff and Decedent have been injured and incurred substantial damages, including but not limited to, the death of the Decedent, medical and hospital expenses, loss of income, physical and mental pain and suffering, loss of enjoyment of life, and other damages for which Defendant is liable.

92.     Defendant's conduct was committed with knowing, conscious, wanton, willful and deliberate disregard for the value of human life and the rights and safety of consumers, including Plaintiff and Decedent, thereby entitling Plaintiff and Decedent to punitive and exemplary damages so as to punish Defendant and deter it from similar conduct in the future.

### TENTH CLAIM FOR RELIEF

#### (Negligent Infliction of Emotional Distress)

93.     Plaintiff realleges all prior paragraphs of the Complaint as if set out here in full.

94.     Defendant placed into the stream of commerce defective heparin, knowing that the heparin was not fit for its intended purpose and knowing that the heparin would be administered to patients such as and including Decedent.

95.     Defendant also knew that Plaintiff and Decedent would suffer emotional distress after the defective heparin was administered to Decedent, ultimately causing attendant medical problems as described herein and resulting in death.

96.     Defendant's conduct in manufacturing, distributing, wholesaling, fabricating, advertising, promoting, retailing, modifying, and placing on the market and into the flow of commerce for human use a known defective product constitutes the negligent infliction of emotional distress

17

upon Plaintiff and Decedent, and has proximately caused emotional distress.

97.    As a direct and proximate result of manufacturing defect in Defendant's heparin, Plaintiff and Decedent have been injured and incurred substantial damages, including but not limited to, the death of the Decedent, medical and hospital expenses, loss of income, physical and mental pain and suffering, loss of enjoyment of life, and other damages for which Defendant is liable.

### ELEVENTH CLAIM FOR RELIEF

#### (Loss of Consortium and Wrongful Death)

98.    Plaintiff realleges all prior paragraphs of the Complaint as if set out here in full.

99.    Plaintiff brings this action on behalf of herself and of the next of kin of Decedent, all of whom lost the care, affection, society, love, and companionship of Decedent, as a direct and proximate result of Defendant's defective heparin and/or the acts and omissions described herein.

100.   As a direct and proximate result of Defendant's defective product, the acts and omissions described herein, and the resulting injuries sustained by Decedent, Plaintiff and Decedent's next of kin have suffered the loss of services, loss of financial support, loss of society, including loss of companionship, care, assistance, and attention, mental anguish, and funeral and burial expenses, entitling them to compensatory and punitive damages and attorney's fees.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendant as follows:

1.    For compensatory damages, including damages against Defendant for wrongful death, medical and hospital expenses, loss of income, loss of consortium, and other damages according to proof at trial in excess of $75,000;

18

2.    For an award of punitive and exemplary damages against Defendant;

3.    For an award of prejudgment interest, costs, disbursements and reasonable attorneys'

fees;

4.    For such other and further relief as the Court deems equitable or appropriate under the

circumstances.

JURY DEMAND

The Plaintiff demands a trial by jury on all issues so triable.


Respectfully submitted,


By: Ryan Krueger, one of the Plaintiff's attorneys

**Ryan Krueger**
**Law Offices of Ryan Krueger**
**4747 W. Peterson Avenue, Suite 404**
**Chicago, Illinois 60646**
**Telephone (312)498-4586**
**Fax (312)242-3042**
**Illinois ARDC No. 6237486**

**Neal Lewis**
**Lewis & Associates**
**P.O. Box 68**
**Orland, Indiana 46776**
**Telephone (260) 829-6729**
**Fax (260) 829-6596**
**Indiana Atty. No. 15492-49**

Date: May 10, 2008